UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DAVID BARTOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00070-TWP-KMB |
| | ) |
| LOWE'S HOME CENTERS, LLC, | ) |
| CENTURY FIRE PROTECTION LLC, | ) |
| MAXIMUM FIRE PROTECTION, LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANT CENTURY'S SUMMARY JUDGMENT MOTION**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Century Fire Protection LLC ("Century") (Filing No. 104). Plaintiff David Bartos ("Bartos") initiated this action alleging negligence against Defendants Lowe's Home Centers, LLC ("Lowe's"), Maximum Fire Protection, LLC ("Maximum"), and Century (collectively, "Defendants") after he fell on black ice in the parking lot of a Lowe's store in Lawrenceburg, Indiana (Filing No. 50). Century moves for judgment as a matter of law, arguing that it cannot be held liable in negligence for Bartos' injury. For the following reasons, Century's Motion is **denied**.

### I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Bartos as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Both Lowe's and Century are limited liability companies doing business in Indiana (Filing No. 50 at 2). Lowe's and Century entered into a Master Professional Services Agreement (the

"Services Agreement"), wherein Century was to perform professional services related to maintenance and repair on fire suppression systems at various Lowe's locations, including the Lowe's in Lawrenceburg, Indiana (the "Lawrenceburg Lowe's") (Filing No. 105 at 3).

On November 21, 2022, Century retained Maximum to perform a fire pump inspection at the Lawrenceburg Lowe's. *Id.* at 4. Kenneth Panko ("Panko"), the employee/Lead Inspector for Maximum, performed the fire pump inspection. *Id.* When Panko arrived at the Lawrenceburg Lowe's at 5:30 a.m., the ground was dry (Filing No. 117-1 at 14:18–23). To properly test the pressure of the fire pump, Panko and other Maximum personnel had to run water through a hose and into the Lawrenceburg Lowe's parking lot. *Id.* at 10:14–11:11. To complete this test, Maximum personnel pumped approximately 4000–5000 gallons of water into the parking lot. *Id.* at 16:6–13.

Before beginning the test, Panko had a meeting with Century, his "contacts at POC, and then the on-site staff at Lowe's, the general manager, the ASM, all of the managers involved." *Id.* at 5–6. Panko explained how the test would take place as well as "what the risks were associated with doing a fire pump test and putting water on the ground" and warned of "the extra risk of us doing it, in a cold time of year, which you don't normally ever do it." *Id.* at 6:4–10.

Later that day, Bartos was walking in the parking lot of the Lawrenceburg Lowe's to return an item he had purchased, when he slipped on black ice that had accumulated and fell, sustaining injury. Both the Services Agreement and a statement of work were in effect between Century and Lowe's at the time of the incident. *Id.*

The Second Amended Complaint brings claims of negligence for failing to properly dispose of the water leading to the black ice that caused Bartos to slip and sustain injury. Specifically, Count I: Negligence against Lowes; Count II: Negligence against Century; and Count III: Negligence against Maximum (Filing No. 50 at 4–7).

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation modified). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation modified). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary

judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citation modified).

### III.   DISCUSSION

To establish a claim of negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty; (2) breach of the duty by allowing conduct to fall below the standard of care; and (3) the plaintiff suffered a compensable injury proximately caused by the defendant's breach of duty. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010). Whether a defendant owes a duty to a plaintiff is a question of law. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992). Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.* at 1373. Century moves for summary judgment on Count II and argues that it is not liable for negligence, because it did not owe Bartos a duty because Maximum, as the entity responsible for the residual water, was an independent contractor and thus, Century is not liable for Maximum's actions ([Filing No. 105](#)).

Century points out that as a general rule, a principal is not liable for the negligence of an independent contractor unless one of five exceptions applies: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Ill. Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 259–260 (Ind. Ct. App. 2009) (quoting *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995)). Century contends that none of the five exceptions to the long-standing rule under Indiana law applies, so it cannot be held liable for the negligence of an independent contractor. *Id.* at 5.

4

In response, Bartos argues that Century's contentions that Maximum was an independent contractor are faulty, and that Maximum was really an agent of Century, and because of this, Century is liable for the acts of its agent, Maximum (Filing No. 116 at 17). Bartos also contends that Century owed him a duty because Century retained control of the premises, and under Indiana law, premises liability rests with the party in possession and control rather than ownership. *Id.* at 21. Finally, Bartos argues that even if Maximum was an independent contractor, an exception to Indiana's rule of non-liability applies because Century assumed a non-delegable duty in the Services Agreement. *Id.* at 24.

The Court will address each of these three arguments in turn.

**A.** **Whether Maximum Was an Agent of Century**

Under Indiana law, a principal may be held liable for the negligent acts of its agents. *See Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999). The question the Court must answer then is whether Maximum was acting as an agent of Century when it performed the fire pump inspection.

Bartos contends that Century exercised sufficient control over Maximum such that Maximum should be deemed an agent, and this question of fact should be decided by a trier of fact and not on summary judgment (Filing No. 116 at 17–18). Bartos points out that the Services Agreement specifically states that all of Century's personnel, including its subcontractors, would be considered employees or agents of Century. Bartos asserts that the Services Agreement states that Century was responsible for and retained the sole authority to hire, fire, direct, control, discipline, evaluate, supervise, promote, suspend, or terminate Maximum, and Century was responsible for monitoring Maximum's performance.

In reply, Century argues that Bartos has failed to present any evidence to demonstrate that Maximum performed its duties in an agency relationship on behalf of Century (Filing No. 123 at 9). Century argues that the provisions of the Services Agreement that Bartos highlights do not actually create an agency relationship or evidence Century's control over Maximum. *Id.* at 9–11. The Court is not persuaded.

Under Indiana law, vicarious liability is "indirect legal responsibility." *Sword*, 714 N.E.2d at 148. "It is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Id.* Courts employ various doctrines to hold people vicariously liable including respondeat superior, which is the applicable tort theory of vicarious liability. *Id.*

"Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable 'for the wrongful acts of his employee which are committed within the scope of employment.'" *Id.* (quoting *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989)). The term "employer" and "employee" are often stated in broader terms as "master" and "servant." *Id.* "It is the employer's right to control that generally separates a servant from an independent contractor." *Id.* Thus, an independent contractor can be defined as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* (internal quotation marks and citation omitted).

Accordingly, "for the liability of an agent to be imputed to a principal, an agency relationship must exist, and an essential element of that relationship is that the agent must act on the principal's behalf." *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 164 (Ind. 2014) (internal quotation marks and citation omitted). "Whether an agency relationship exists is generally a

6

question of fact, but if the evidence is undisputed, summary judgment may be appropriate." *Id.* (quoting *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011), *transfer denied*). To satisfy the control element, "[i]t is necessary that the agent be subject to the control of the principal with respect to the details of the work." *Demming*, 943 N.E.2d at 885 (quoting *Turner v. Bd. Of Aviation Comm'rs*, 743 N.E.2d 1153, 1163 (Ind. Ct. App. 2001), *transfer denied*). "[T]he 'right to control' does not require the master actually exercising control over the actions of an agent, but merely having the right to do so." *Smith*, 9 N.E.3d at 164.

The designated evidence supports the inference that Maximum acted as an agent of Century. First, under the Services Agreement, Century agreed that "[Century's Personnel . . . will perform the Services," such as the fire pump inspection at issue here, (*see* Filing No. 118 at 11– 12), and "will for all purposes be [Century's] employees or [Century's] agent." *Id.* at 15. The Services Agreement then states,

> [Century] will be solely responsible for the acts of [Century's] Personnel, whether of commission or omission, and for all other charges and liabilities arising out of the employer-employee relationship or other contractual relationship with [Century's] Personnel including, without limitation, liabilities under any civil rights laws, wages and hour laws, equal employment opportunity acts, any union, welfare and pension contributions and the expense of prosecuting, defending or complying with the award in any labor arbitration proceeding.

*Id.* Under the terms of the Services Agreement, Century retained "sole authority to hire, fire, direct, control, discipline, reward, evaluate, schedule, supervise, promote, suspend and/or terminate [Century's] Personnel." *Id.* Further, "[Century's] Personnel" is defined a Century's "employees, agents, contractors and subcontractors." *Id.* at 10.

Century argues that the Services Agreement "does not say the subcontractors will be considered employees or agents. Rather, it says '[Century's] Personnel' will be defined as [Century's] employees, agents, contractors and subcontractors as this definition is used through the

7

[Services Agreement]." (Filing No. 123 at 9). Century further argues that the provisions above do not indicate that Century and Maximum agreed to an agency relationship and that the focus of the agreement was when Lowe's would not be responsible.

Century's contentions omit the clear language of the Services Agreement which specifically states that Century "will provide qualified [Century's] Personnel who possess the proper skill, training, experience and background to perform the Services," and that "[n]either [Century] nor [Century's] Personnel are employees or agents of Lowe's; all such individuals will for all purposes be [Century's] employees or [Century's] agent." *Id.* at 15. Accordingly, Century agreed to have "[Century's] Personnel" perform the fire pump inspection at issue in this case, and all such individuals would for all purposes be its "employees" or "agent." Century also retained the sole authority to "hire, fire, direct, *control*, discipline, reward, evaluate, schedule, supervise, promote, suspend and/or terminate" those individuals. *Id.* (emphasis added).

Century also argues that Panko performed the inspections, assessed the risks, explained the risks to Lowe's and Century, outlined Maximum's plan of action, and provided options to Lowe's to change the plan of action including providing a water truck and/or salting services after the completion of the project (Filing No. 123 at 11). This argument is not persuasive; the issue is not whether Century did in fact exercise control over Panko and Maximum because the right to control does not require the master to actually exercise such right. *Smith*, 9 N.E.3d at 164. The question for the Court is whether Century had the right to exercise control. The contractual provisions contained in the Services Agreement indicate that Century had such right.

Finally, Century's argument that Panko performed the inspection and therefore is an independent contractor is lacking in the face of clear contractual provisions stating that the individuals who were to perform the fire inspection were deemed employees and agents of

8

Century. Accordingly, whether Maximum acted as an agent of Century is a question of fact that should be decided by a trier of fact, and summary judgment is not warranted on this basis.

### B. Whether Century Is Subject to Premises Liability

"In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2005) (cleaned up). The Indiana Supreme Court adopted the following language defining the duty owed an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he,
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Pennington v. Mem'l Hosp. of South Bend, Inc.*, 223 N.E.3d 1086, 1097 (Ind. 2024) (quoting Restatement (Second) of Torts § 343 (Am. L. Inst. 1965)). "Under this test, foreseeability is an element of duty." *Id.* "In cases involving conditions on the land or premises, section 343's foreseeability analysis focuses specifically on 'the condition' that allegedly resulted in injury." *Id.* (quoting Restatement (Second) of Torts § 343). For example, in *Griffin v. Menard, Inc.*, the plaintiff was injured when a sink fell onto him out of a cardboard box. 175 N.E.3d 811, 812 (Ind. 2021). The Indiana Supreme Court focused on whether Menard had any "actual or constructive knowledge that the box was defective." *Id.* at 814.

A "possessor" is defined as "a person who is in occupation of the land with intent to control it." *Jackson v. Scheible*, 902 N.E.2d 807, 810 (Ind. 2009) (quoting Restatement (Second) of Torts

9

§ 328E(a)). Accordingly, possession turns on control over the condition causing injury. *See id.* ("A theme throughout our premises liability cases is that liability arises from actual control over the condition causing the injury."). "Possession and control of property for premises liability purposes generally is a question of fact involving occupation and intent to control the particular area where an injury occurred." *McCraney v. Gibson*, 952 N.E.2d 284, 288 (Ind. Ct. App. 2011) (cleaned up).

Bartos argues that Century had sufficient control over the premises to establish liability because Century was responsible for performing the fire system repair and maintenance at the Lawrenceburg Lowe's property, including any inherent services necessary for proper performance of its work, and because Century had the power to supervise, manage, and direct all work it was required to perform under the Services Agreement (Filing No. 116 at 22). Bartos continues that Century was responsible for removing all waste created from its services, including water, from the property. *Id.* at 23. Bartos also contends that Century is subject to premises liability because it could have acted to prevent the foreseeable harm. Maximum points out that performing the fire pump test in the winter could create a slip and fall hazard, but Century decided to proceed with the test anyways. *Id.* Century replies that it is not subject to premises liability because Lowe's was the entity who made the decision to proceed because Lowe's was the owner of the property and the party in control of the premises (Filing No. 123 at 12).

The Court concludes that here, the harm was foreseeable. Both parties acknowledge that Maximum warned of a slip and fall risk if the inspection was performed during the winter. A material question of fact remains as to which entity was in possession of the Lawrenceburg Lowe's parking lot and in control of the condition causing the injury. The parties dispute which entity made the final decision to proceed with the inspection after Maximum warned of a slip and fall hazard. Panko testified that he told Century of all the risks and then "let [Century] make the decision on

10

whether or not to proceed with the work." (Filing No. 117-1 at 5:15–21). However, Century designates evidence that Lowe's was the party responsible for the decision to proceed. Based on the evidence in the record, the Court cannot conclude as a matter of law that Century did not have control of the condition that caused the injury.

Further, "the simple fact of ownership is not necessarily dispositive of the question of possession or control and the duty that arises therefrom." *Reed v. Beachy Constr. Corp.*, 781 N.E.2d 1145, 1150 (Ind. Ct. App. 2002). The simple fact that Lowe's owned the parking lot does not absolve Century of premises liability. A trier of fact could nonetheless conclude that Century was in control of the condition causing injury—the 4,000 to 5,000 gallons of water pumped into the parking lot—and therefore was in the best position to prevent the foreseeable harm. Accordingly, summary judgment is not warranted on this basis.

C.      **Whether Century Assumed a Non-Delegable Duty**

Bartos also argues that even if Maximum was acting as an independent contractor rather than an agent of Century, Century assumed a non-delegable duty in the Services Agreement and thus owed him a duty of care (Filing No. 116 at 24). Century argues that it did not assume a non-delegable duty and therefore cannot be held liable for the acts of an independent contractor (Filing No. 123 at 12). Having already concluded that Maximum was acting as an agent of Century, this issue is not dispositive. Nonetheless, the Court will briefly address the parties' arguments.

As noted earlier, in Indiana, a principal is not liable for the negligence of an independent contractor unless one of five exceptions applies. *See Bagley*, 658 N.E.2d at 586. The parties' contentions focus on the second exception—where the principal is by law or contract charged with performing the specific duty—and agree that the other exceptions do not apply. A duty of care may be assumed via contract if the contract "affirmatively evinces intent to assume a duty of care."

11

*Estate of Staggs v. ADS Logistics Co.*, 102 N.E.3d 319, 324–325 (Ind. Ct. App. 2018) (quoting *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007)). Further, "a duty imposed by contract, once formed, is non-delegable." *Id.* (citing *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 912 (Ind. 2017)).

To determine if a party has assumed a duty via contract, Indiana courts use well established principles of contract interpretation. *Ryan*, 72 N.E.3d at 914. Clear and unambiguous language is given its ordinary meaning, and the contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless. *Id.* (cleaned up).

Century argues that there is no language in the Services Agreement which evidences that it assumed any duty toward Bartos. Century also argues that under Indiana law, "[c]ourts are to infer a contractually assumed duty that contravenes the common law presumption that a contractor has no duty only if the language of the contract affirmatively evinces an intent to assume a duty of care." (Filing No. 123 at 13 (quoting *Shiel Sexton Co., Inc. v. Towe*, 154 N.E.3d 827, 834 (Ind. Ct. App. 2020))).

In his Response, Bartos argues that Century assumed sole responsibility for the acts of its personnel and specifically agreed to properly dispose of the water in the Lawrenceburg Lowe's parking lot (Filing no. 116 at 26). Bartos argues that the obligation to dispose of the water is a specific duty analogous to the duties recognized in *Ryan*, 72 N.E.2d 908, *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240 (Ind. Ct. App. 1994), *Stumpf*, 863 N.E.2d 871, and *Gwinn v. Harry J. Kloeppel & Associates, Inc.*, 9 N.E.3d 687 (Ind. Ct. App. 2014). Bartos concludes that the provisions in the Services Agreement reflect a clear and affirmative assumption of responsibility for maintaining safe conditions on the site. The Court disagrees.

While Century assumed sole responsibility for the acts of its personnel, such assumption is indicative of the respondeat superior theory of liability rather than an assumption of a non-delegable duty to keep the workplace safe for third parties. Indeed, assuming responsibility for one's own employees does not evince a specific intent to protect third parties from harm. In addition, while Bartos asserts that Century agreed to dispose of the water resulting from the inspection, he fails to point to a specific provision in the Services Agreement to support this assertion, and the Court declines to "cobble together language" to create a specific intent to protect third parties by Century. *See Shiel Sexton*, 154 N.E.3d at 835 ("We decline to cobble together language from various portions of the Master Contract to change the meaning of the language provided in the provision about Safety."). Without a specific intent, the Court will not infer one. *See id.* at 834.

### IV.  CONCLUSION

For the reasons discussed above, Century's Motion for Summary Judgment (Filing No. 104) is **DENIED**.

**SO ORDERED**.

Date:  12/31/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Christopher M. Barry
CRAIG KELLEY & FAULTLESS
cbarry@ckflaw.com

Whitney Lee Coker
CRAIG KELLEY & FAULTLESS
wcoker@ckflaw.com

Alexander Ryan Craig
CRAIG, KELLEY & FAULTLESS LLC
acraig@ckflaw.com

David W. Craig
Craig Kelley and Faultless
dcraig@ckflaw.com

Samantha Christine Craig
CRAIG KELLEY AND FAULTLESS
5845 Lawton Loop DR E
Indianapolis, IN 46216

Scott Anthony Faultless
Craig, Kelley & Faultless
sfaultless@ckflaw.com

Kaleb I Hobgood
Plunkett Cooney, PC
khobgood@plunkettcooney.com

Kimberly E. Howard
Fisher Maas Howard Lloyd & Wheeler, PC
khoward@fishermaas.com

William J. Kelley
Craig, Kelley & Faultless
bjkelley@ckflaw.com

Patrick Jacob Kotter
CRAIG, KELLEY & FAULTLESS LLC
jkotter@ckflaw.com

Sidney Lewellen
Craig, Kelley & Faultless LLC
slewellen@ckflaw.com

Donald G. Orzeske
ORZESKE & BLACKWELL, P.C
dorzeske@indylitigation.com

Pamela A. Paige
Plunkett Cooney, P.C.
ppaige@plunkettcooney.com